UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SIENA DEL LAGO CONDOMINIUM ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN FIRE AND CASUALTY COMPANY,<br><br>Defendants. | C12-251 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on Defendant Mt. Hawley's Motion for Summary Judgment, docket no. 19, and Plaintiff Siena Del Lago Condominium Association's Cross-Motion for Summary Judgment, docket no. 23. Having considered the motions and all pleadings filed in support of and opposition to the motions,[1] the Court enters the following Order.

---

[1] Defendant asks the Court to strike certain attachments to the Declaration of Daniel S. Houser and to strike the Supplemental Declaration of Daniel S. Houser as untimely. Defendant's Reply, docket no. 27, at 3 and Defendant's Surreply, docket no. 34, at 1. The Court DENIES Defendant's motions to strike and has considered all relevant evidence submitted by both parties.

ORDER - 1

**Background**

   **A. Mt. Hawley Insurance Policy**

On May 11, 2011, Plaintiff tendered a first-party property claim to Mt. Hawley, indicating that Plaintiff had "recently discovered severe decay at portions of the condominium buildings," and that Plaintiff believed the Mt. Hawley policy may provide coverage.  Paccagnini Decl., docket no. 21, Ex. 1.  Plaintiff asserts that the damage was caused by a combination of wind-driven rain and faulty workmanship.  Plaintiff's Motion, docket no. 23, at 2.

Mt. Hawley is one of several insurance companies which provided insurance to Plaintiff.[2]  The Mt. Hawley Policy ("Policy") was issued to Plaintiff for the term 10/15/1999 to 10/15/2000 and was renewed twice, extending coverage through 10/15/2002.  Paccagnini Decl., Ex. 6.  The Policy is a "difference in conditions" policy which specifically provides coverage for loss due to an earthquake as well as generally provides coverage for loss or damage except as excluded by the Policy.  Id.  The exclusionary clause at issue in this case is item 7(A)(3), which states that the Policy does not insure against "Other perils as defined and limited, under policies insuring against perils carried by the Insured under any other more specific insurance arranged for and in the name of the insured."  Id.  The Policy required Plaintiff to obtain underlying "standard all risk insurance" during the term of the Policy.  Id.

---

[2] Plaintiff's other insurance companies have all been voluntarily dismissed from the case following settlement with Plaintiff.  Notice of Voluntary Dismissal, docket no. 13.

ORDER - 2

The Policy also excludes from coverage loss caused by faulty workmanship. Exclusion 7(P) states that the Policy does not insure against "faulty workmanship or faulty materials, unless the collapse of the property or a part thereof ensues and then only the ensuing loss." Id.

**B.  Underlying Insurance Policies**

Plaintiff obtained underlying insurance for the term of the Policy.  Plaintiff's underlying insurer was American National Fire Insurance Company ("American National") for the period 1999 – 2000 and was American Fire and Casualty Company ("American Fire") for the period 2000 – 2002.  Tindal Decl., docket no. 20, Exs. 4-5, 7. The American National and American Fire policies contain substantially the same provisions, and where there is no distinction between them they will be referred to as the "American Policies."

The American Policies provide coverage for "direct physical loss of or damage to Covered Property…caused by or resulting from any Covered Cause of Loss."  American Policies, Tindal Supp. Decl., docket no. 28, Ex. A.  "Covered Cause of Loss" is defined as risk of direct physical loss unless the loss is excluded or limited by the American Policies.  Id. Ex. B.  None of the exclusions or limitations applies to the peril of wind-driven rain under the facts of this case.  See id.  Both American Policies exclude coverage

ORDER - 3

1  for loss or damage caused by the peril of faulty workmanship.[3]  Houser Decl., docket  no.

2  24, Ex. J p. 5

### C. Mt. Hawley's Determination of Coverage

Mt. Hawley issued its coverage decision on February 13, 2012, denying coverage for all of Plaintiff's claims.  Paccagnini Decl., docket no. 21, Ex. 5.  Mt. Hawley relied on Exclusion 7(A)(3) in determining that there was no coverage under the Mt. Hawley Policy.  Id. Ex. 5 page 8.  Although Mt. Hawley listed the faulty workmanship Exclusion 7(P) in its denial letter to Plaintiff, id. Ex. 5 page 3, it did not explicitly rely on that exclusion in denying coverage because Plaintiff had asserted that wind-driven rain, not faulty workmanship, was the proximate cause of the damage.  Id. page 9.  Mt. Hawley determined that there was no coverage for the damage because the peril of wind-driven rain was not excluded by Plaintiff's underlying American Policies.  Id. page 8.

In addition, Exclusion 7(P) of the Policy contains an "ensuing loss" clause providing coverage for collapse ensuing from faulty workmanship.  In its denial letter, Mt. Hawley stated that coverage for collapse was also denied because Plaintiff had not "produced any evidence indicating that any area of the condominium building reached a state of

---

[3] There is one difference in the language between the two American Policies.  The American National policy states that it "will not pay for loss or damage caused by any of the excluded events described below.  Loss or damage will be considered to have been caused by an excluded event if the occurrence of that event… initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence."  Houser Decl., docket no. 24, Ex. J p. 5.  The American Fire policy also excludes faulty workmanship, but rather than the same causation language the policy contains a "resulting loss" clause which states that "if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage."  Id. Ex. 5 p. 7.  The distinction is not material to resolution of this case.

ORDER - 4

substantial impairment of structural integrity during any of the Mt. Hawley Policy periods."[4] Id. page 9.

**Discussion**

### A. Standard of Review

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party will be entitled to judgment if the evidence is not sufficient for a jury to return a verdict in favor of the opponent. Id. at 249. If the moving party meets its initial burden, the opposing party "may not rely merely on allegations or denials" in its pleadings. Fed. R. Civ. P. 56(e). The non-moving party must "set forth specific facts showing that there is a genuine issue for trial" in order to defeat the motion. Id.; Anderson, 477 U.S. at 250.

### B. Coverage Under the Mt. Hawley Policy

In this case, the parties filed cross-motions for summary judgment, indicating that there are no material facts in dispute and judgment is proper as a matter of law. Interpretation of language in an insurance policy is a question of law. Vision One, LLC v. Phila. Indem. Ins. Co., 174 Wn.2d 501, 512 (2012). The Court construes the insurance

---

[4] Plaintiff will be unable to show coverage for collapse because the Mt. Hawley policy period ended in 2002 and the damage was not discovered until 2011. In order to show collapse, Plaintiff must establish both substantial impairment and an imminent threat of collapse. See Queen Anne Park Homeowners Association v. State Farm Fire and Casualty Company, 2012 WL 5456685 (W.D. Wash. Nov. 8, 2012). Because almost nine years elapsed between the end of coverage and discovery of damage, Plaintiff cannot show imminent collapse as a matter of law.

ORDER - 5

policy as the average person purchasing insurance would, giving the language "a fair, reasonable, and sensible construction." Id. (citations omitted). If the language of the policy is clear and unambiguous, "the court must enforce it as written and may not modify it or create ambiguity where none exists." Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wn.2d 654, 666 (2000). A term of an insurance contract is only ambiguous when it is "fairly susceptible to two different interpretations, both of which are reasonable." Id. "Ambiguities in the policy are construed against the drafter-insurer" and exclusions are strictly construed against the insurer. Vision One, 174 Wn.2d at 512.

### 1. Coverage for the Peril of Faulty Workmanship

Plaintiff asserts that the damage was caused by a combination of wind-driven rain and faulty workmanship, and Mt. Hawley accepts these facts as true for purposes of this motion. Plaintiff's Motion, docket no. 23, at 2; Defendant's Reply, docket no. 27, at 17. It is not disputed that the faulty workmanship set the causal chain in motion and the peril of wind-driven rain occurred later in the chain. Because the peril of faulty workmanship is excluded by the Policy as well as by the American Policies, the efficient proximate cause rule does not apply and a determination of which peril was the predominant cause is not material to the outcome of the case.[5] The Court must look to the language of the

---

[5] "The efficient proximate cause rule applies only when two or more perils combine in sequence to cause a loss and a *covered peril* is the predominant or efficient cause of the loss." Vision One, 174 Wn.2d at 519 (emphasis in original). In that situation, the rule will mandate coverage, even if an excluded event appears in the chain of causation. Id. If an excluded peril sets in motion a causal chain that includes covered perils, the rule does not mandate exclusion of the loss. Id. Rather, the Court must look to the policy language to determine whether there is coverage for the loss. Id.

ORDER - 6

Policy to determine whether there is coverage for the loss when an excluded peril (faulty workmanship) sets in motion a chain that includes the peril of wind-driven rain.

### 2. Coverage for the Peril of Wind-Driven Rain

In order to determine whether there is coverage under the Mt. Hawley Policy for the peril of wind-driven rain,[6] the Court must interpret the language of Exclusion 7(A)(3). The Exclusion states that the Policy does not insure against "Other perils as defined and limited, under policies insuring against perils carried by the Insured."[7] The parties agree generally that the exclusion means "that Mt. Hawley's policy excludes coverage for other perils to the same extent that those perils are defined and limited in [Plaintiff's] underlying all-risk policies." Defendant's Reply, docket no. 27, at 11; Plaintiff's Motion, docket no. 23, at 8. The parties disagree as to the meaning of "defined" as well as what constitutes a "limitation" on the peril under the Policy exclusion.

### i. Meaning of a "Defined" Peril

Plaintiff asserts that the Policy exclusion bars coverage for a peril only if the precise meaning of the peril is stated in the Plaintiff's underlying American Policies. The peril of wind-driven rain is not precisely or separately defined in the American Policies

---

[6] Plaintiff asserts that wind-driven rain is a distinct peril that Mt. Hawley failed to exclude in the Policy. Plaintiff's Motion, docket no. 23, at 43. Although Mt. Hawley could have drafted its policy provisions to clearly exclude this peril, it chose not to do so. Because the Mt. Hawley Policy provides for gaps in coverage, drafting exclusionary language to specifically exclude every single peril covered by underlying insurance would be difficult. Mt. Hawley relied on Exclusion 7(A)(3) in making its coverage determination, and the Court must consider the language of that exclusion in determining coverage, not language that could have been used to explicitly exclude this peril.

[7] Plaintiff notes that Mt. Hawley improperly quoted Exclusion 7(A)(3) in its policy denial letter by adding a comma before the word "as." Plaintiff's Motion, docket no. 23, at 9. The Court finds that Mt. Hawley's additional comma does not change the meaning of the policy exclusion and does not impact the Court's analysis.

ORDER - 7

but is instead covered by the catch-all all-risk agreement, in that it is not excluded from coverage.  Plaintiff's Motion, docket no. 23, at 16.  Mt. Hawley responds that the American Policies define all perils they insure against.  Defendant's Reply, docket no. 27, at 12.  The American Policies insure against any "Covered Cause of Loss," which is defined by listing the perils excluded or not insured against.  Id.

Giving the language of the Policy exclusion its ordinary and fair meaning, a peril does not need to be precisely defined in the American Policies in order to be excluded by Exclusion 7(A)(3).  A peril may be excluded by the Policy as long as it falls within the definition of perils provided in the American Policies.  One example is the peril of theft.  Theft is covered by the American Policies not because it is precisely defined in those policies, but rather because it is not excluded by the policies.  Thus theft falls within the definition of perils under the American Policies because it is a "Covered Cause of Loss" under those policies and may be excluded by Mt. Hawley Exclusion 7(A)(3).

This interpretation is the only reasonable interpretation of the Policy exclusion because otherwise the difference in conditions policy would be required to provide coverage for all perils not precisely defined, but otherwise covered, by the American Policies.  The Mt. Hawley Policy provides coverage for "gaps" in the American Policies; the Policy cannot be reasonably interpreted to provide coverage for all perils covered by the American Policies.  Plaintiff's interpretation is overly broad and strains the reasonable meaning of the language.  The peril of wind-driven rain is not listed as one of the exclusions in Plaintiff's underlying American Policies and therefore is insured against as a "Covered Cause of Loss" and is excluded by Policy Exclusion 7(A)(3).

ORDER - 8

### ii.  Meaning of a "Limited" Peril

The parties also disagree as to the meaning of perils as "limited" in the Policy exclusion.  Defendant asserts that the exclusionary language refers to limitation on the peril, not a limitation on coverage generally.[8]  Defendant's Reply, docket no. 27, at 14.  Plaintiff contends that Exclusion 7(A)(3) cannot apply because the American Policies limit coverage to damage commencing during the policy period.  Plaintiff's Motion, docket no. 23, at 40.  Plaintiff asserts that the damage commenced long before the policy period in question and thus the American Policies do not cover the damage at Siena Del Lago.  Id.  The Mt. Hawley Policy contains no restriction or limitation as to when the damage must commence in order to be covered.[9]  Id.

In the context of Washington insurance law, the term peril "refers to fortuitous, active, physical forces such as lightning, wind, and explosion, which bring about the loss."  Vision One, 174 Wn.2d at 513.  The definition of peril shows that there is a distinction between a "peril" and a "loss": a "peril" is some force that brings about a "loss."  The commencing condition contained in the American Policies states that the policy will cover "loss or damage" commencing "during the policy period."  Tindal

---

[8] Despite Plaintiff's assertion to the contrary, Mt. Hawley has not changed its interpretation of the policy language and "conceded that its original interpretation was unreasonable."  See Plaintiff's Reply, docket no. 30, at 2.  Mt. Hawley has consistently held, in its arguments to this Court and in the deposition testimony cited by Plaintiff, that the commencing condition is irrelevant because it is a coverage limitation and not a limitation on the peril.

[9] Because the Mt. Hawley Policy does not contain a commencing condition, Mt. Hawley would be required to cover any non-excluded damage commencing prior to the Policy period.  See Plaintiff's Motion, docket no. 23, at 37.

ORDER - 9

Supp. Decl., docket no. 28, Ex. D.  This condition on its face limits what losses will be covered, not what perils will be covered by the American Policies.

Policy Exclusion 7(A)(3) refers only to *perils* as limited, not losses or coverage as limited.  Under the simple meaning of this exclusion, the Policy excludes a peril to the extent that peril is limited by the American Policies, not to the extent coverage or loss is generally limited by a limiting condition such as the commencing condition at issue here.  This is the only reasonable interpretation of the Policy language.[10]  Thus the American Policies' commencing condition, which does not limit a peril, does not bar application of Policy Exclusion 7(A)(3).[11]

Because the peril of wind-driven rain is not listed as an excluded peril in the American Policies, it is included as a "Covered Cause of Loss" as defined by the American Policies.  In addition, the peril of wind-driven rain is not limited by the commencing condition contained in Plaintiff's underlying American Policies because the condition limits loss.  Therefore the peril of wind-driven rain is an excluded peril under Mt. Hawley Policy Exclusion 7(A)(3).

---

[10] The Court finds there is only one reasonable interpretation of the Policy Exclusion, therefore the Court need not consider Plaintiff's argument that extrinsic evidence would help interpret the meaning of the exclusion. See Plaintiff's Motion, docket no. 23, at 17-18.  Even if the Court were to consider the extrinsic evidence presented, it would not change the Court's determination on the reasonable interpretation of Exclusion 7(A)(3).

[11] The American Policies do limit the peril of wind-driven rain, by excluding coverage for damage to the interior of a building or to personal property within the building caused by the peril of wind-driven rain.  This limitation is not relevant to the issues presented in this case, but is illustrative of a limitation on a peril.

### 3. Coverage Conclusion

For purposes of the pending cross-motions for summary judgment, the parties agree that there are two perils which caused Plaintiff's loss: faulty workmanship and wind-driven rain. The Court holds that the peril of faulty workmanship is an excluded peril under Mt. Hawley Policy Exclusion 7(P). The Court holds that the peril of wind-driven rain is an excluded peril under Policy Exclusion 7(A)(3) because the peril of wind-driven rain is not excluded as a "Covered Cause of Loss" by the underlying American Policies and is therefore defined by those policies. The peril of wind-driven rain is not limited by the commencing condition contained in the American Policies, which limits loss rather than a peril. The Court holds that because both asserted causes of damage are excluded perils under the Mt. Hawley Policy, there is no coverage under the Mt. Hawley Policy for any of the damage to Plaintiff.

### C. Extra-contractual Claims

In addition to its breach of contract claims, Plaintiff also seeks damages under RCW §§ 48.30.015 Insurance Fair Credit Act ("IFCA"), 48.01.030 (requirement of good faith), and 19.86.170 Washington Consumer Protection Act ("CPA"). Plaintiff's Motion, docket no. 23, at 46-50. These extra-contractual claims require Plaintiff to prove it suffered some injury or damage due to the conduct of Mt. Hawley. See RCW § 48.30.015 (insured who is unreasonably denied coverage may bring action to recover actual damages sustained); Smith v. Safeco Ins. Co., 150 Wn.2d 478, 485 (2003) (insured has burden of proving damages caused by insurer's bad faith); Hangman Ridge Training

Stables v. Safeco Title Ins. Co., 105 Wn.2d 778, 780 (1986) (plaintiff has burden of proving injury to prevail in CPA claim).

The Court must dismiss Plaintiff's IFCA claim because Mt. Hawley's denial of coverage was proper and therefore it did not act unreasonably in denying coverage. The Court must dismiss Plaintiff's bad faith and CPA claims because Plaintiff has failed to identify damages proximately caused by Mt. Hawley's conduct. Plaintiff asserts that Mt. Hawley should be found liable for "any resulting harm caused by [Mt. Hawley's] unreasonable delays, such as additional amounts spent on attorneys, experts, investigation, and temporary repairs." Plaintiff's Motion, docket no. 23, at 47. However, Plaintiff fails to provide the Court with any evidence that it has suffered damage due to Mt. Hawley's conduct and has therefore failed to establish a genuine issue of material fact precluding summary judgment.

**Conclusion**

The Court DENIES Plaintiff's Motion for Summary Judgment, docket no. 23, GRANTS Defendant's Motion for Summary Judgment, docket no. 19, and DISMISSES Plaintiff's claims with prejudice.

IT IS SO ORDERED.

The Clerk is directed to send a copy of this Order to all counsel of record.

Dated this 14th day of May, 2013.

THOMAS S. ZILLY
United States District Judge

ORDER - 12